IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRIM CAPITAL CORPORATION<br>2500 BP Tower<br>200 Public Square<br>Cleveland, Ohio 44114<br><br>    Plaintiff<br><br>v.<br><br>LARRY W. HARMON<br>2209 Plaza Drive, Suite 100<br>Rocklin, California 95765<br><br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br>JUDGE<br><br><br><br><br><br>COMPLAINT<br>(Plaintiff Demands a Trial<br>By Jury) |

1. The jurisdiction of this Court over the subject matter of this action is conferred pursuant to 28 U.S.C. Section 1332 (a) in that there is complete diversity of citizenship between the parties to this action and the amount in controversy here, excluding interest, exceeds Seventy Five Thousand Dollars ($75,000.00). Venue is properly laid in this District pursuant to 28

      U.S.C. Section 1391 in that defendants conduct business in this District and the cause of action alleged herein arose in this District.

2. Plaintiff Prim Capital Corporation ("Prim") is an Ohio corporation having its principal place of business at 2500 BP Tower, 200 Public Square, Cleveland, Ohio 44114. Prim does not maintain offices in the state of California.

3. Defendant Larry W. Harmon ("Harmon") is a resident of the states of California. Harmon maintains offices at 2209 Plaza Drive, Suite 100, Rocklin, California 95765. Harmon does not maintain an office or a residence in the state of Ohio. At all times material to this action Harmon was represented by Robert J. Lanza, Esq.

4. On or about February 16, 2007 Lanza acting as counsel for Harmon filed suit against Prim in the United States District Court for the Eastern District of California, Sacramento Division. Harmon authorized Lanza to file that lawsuit, ***Harmon et al v. Prim Capital Corporation et al,*** Docket Number 2:07-CV-00313 (DFL) (DAD) ("California suit"), on Harmon's behalf. In the California suit Harmon alleged that Prim had engaged in "predatory" actions and had made fraudulent misstatements to clients of Harmon who were players represented by the National Basketball Players Association ("NBPA") in order to cause those NBPA players to sever their business relationship with Harmon and become clients of Prim. Harmon, in the California suit, also alleged that the "predatory" actions of Prim and the fraudulent misstatements by Prim occurred within the context of audits

that Prim performed for NBPA players. Harmon's complaint in the California suit asserted that Prim used those audits as a stratagem to steal NBPA player clients from their financial advisers. Lanza, as the attorney who signed the complaint filed in the California suit, was under an obligation to be reasonably assured that the facts alleged in that complaint and the claims made in that complaint had a reasonable basis in fact. As will be discussed more fully below, Lanza failed to honor that obligation and affixed his name to pleadings in the California suit that Lanza knew contained untrue factual statements. That Lanza knowingly misstated facts in the California suit is confirmed by the fact that Lanza had attended a meeting with Gary Hall, Esq., General Counsel for the NBPA, Robert Gadson, Director of Security for the NBPA, Daniel Davillier, Esq. of the international law firm Phelps, Dunbar, Attorney for Prim and Prim Principal, Anthony Delfre at which meeting the terms of Prim's contract with the NBPA were specifically discussed and it was made clear to Lanza that Prim could not represent NBPA players for whom Prim had performed audits. Harmon and Lanza engaged the services of a process server in Cleveland, Ohio. On or about February 21, 2007 the process server in Cleveland, Ohio engaged by Harmon and Lanza served papers relating to the California suit on Prim at Prim's Cleveland, Ohio offices.

5. Both Harmon and Lanza knew at the time that the pleadings in the California suit were prepared, filed and served on Prim, that significant factual allegations made against Prim in the California suit were false.

3

Based on Lanza's attendance of the meeting referred to in paragraph 4, both he and Harmon knew of facts that contradicted the significant allegations made against Prim in the California suit; facts known by Harmon and Lanza, yet contradicted by allegation in that suit included:

a. The audits performed by Prim for NBPA players were part of a program created and governed by a written contract between Prim and the NBPA;

b. The purpose behind the audit program was to protect NBPA players from being over-charged or taken advantage of by their financial advisers;

c. **The contract between Prim and the NBPA creating and governing the audit program prohibited Prim from establishing a business relationship with any NBPA player for whom Prim had performed an audit;**

d. Prim could not perform an audit unless and until an NBPA player had made a written request through the NBPA for such an audit;

e. Harmon's client Jarvis Hayes ("Hayes") had requested through the NBPA that Prim conduct an audit but had ended his business relationship with Harmon before Prim had performed that audit;

f. Harmon client Ben Gordon ("Gordon") had made a written request through the NBPA for such an audit;

g. Harmon had not cooperated with Prim with regard to the Gordon audit;

h. **The Gordon audit showed that Harmon had (1) charged Gordon an unreasonably high fee, (2) raised the fee charged to Gordon during the period in which the audit was conducted and (3) not been truthful to Gordon about the fee increase**, and

i. Harmon client Drew Gooden ("Gooden"), an NBPA player for the Cleveland Cavaliers for whom Harmon had performed services in the state of Ohio and in this District, did not have an audit performed for him by Prim.

Harmon and Lanza also knew prior to the filing of the California suit that Harmon client, NBPA player Carmelo Anthony ("Anthony"), had contacted the NBPA to request that Prim perform an audit.

6. Harmon in collaboration with Lanza maliciously filed the California suit without basis or probable cause and for clearly improper purposes. Harmon in collaboration with Lanza filed the California suit for the following improper purposes;

a. Improperly and unjustifiably discrediting Prim in order that other NBPA players represented by Harmon not contact the NBPA to request that Prim perform an audit;

    b.    Ameliorating the negative findings about Harmon that Prim had made and communicated to Gordon through the Gordon audit, and

    c.    Enticing Anthony not to proceed with an audit with Prim which audit would reveal the same things as were developed in the Gordon audit.

The California suit against Prim prepared by Lanza and instituted by Harmon was malicious and contained allegations that both Harmon and Lanza knew were false. **Prime examples of Harmon's and Lanza's underlying malice in bringing the California suit were the allegations that Prim used the audits as a "predatory" means to steal NBPA player clients from financial advisers when both Harmon and Lanza both knew that Prim was contractually prohibited from accepting as a client any NBPA player for whom Prim had conducted an audit.**

7.    Knowingly false and malicious allegations such as the allegations of fraud and predatory conduct made by Harmon in pleadings prepared by Lanza have injured Prim in its business and its reputation. Prim has also incurred significant expense in defending the California suit prepared and filed by Harmon and Lanza. Among the defensive actions Prim was obliged to take in response to the California suit were the filing of a Motion To Dismiss and the sending of a "safe harbor" letter to Lanza pursuant to Rule 11, Federal Rules of Civil Procedure. On or about April 5, 2007 Harmon, in a notice signed by Lanza, voluntarily dismissed the California

suit. Harmon is liable to Prim for the economic and compensatory damages that Prim has sustained as a direct and proximate result of the malicious California suit. Harmon and Lanza acted willfully, wantonly, maliciously and in reckless disregard for Prim's rights.

WHEREFORE Prim requests that this Honorable Court grant Prim judgment against Harmon for economic and compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), interest on all sums found to be due Prim from Harmon, and the costs of this action including the reasonable attorney fees incurred by Prim in the prosecution of this action.

S/Sam A. Zingale
Sam A. Zingale 0033410
700 Rockefeller Building
614 Superior Avenue
Cleveland, Ohio 44113-1318
(216) 696-7170
FAX: (216) 696-8076
E-Mail: sazingale@yahoo.com
Attorney For Prim Capital Corporation